IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CERDANT, INC., and THE LAPTOP GUY, INC., individually and on behalf of all others similarly-situated | : : : : | Case No. 2:08-cv-186 |
| Plaintiffs, | : : | |
| v. | : : | JUDGE ALGENON L. MARBLEY Magistrate Judge Abel |
| DHL EXPRESS (USA), INC. | : : | |
| Defendant. | : | |

**OPINION & ORDER**

**I. INTRODUCTION**

Plaintiffs Cerdant, Inc. ("Cerdant") and The Laptop Guy, Inc. ("Laptop Guy") bring this class action, on behalf of themselves and all others similarly situated, against Defendant DHL Express (USA), Inc. ("DHL"). Plaintiffs' claims stem from their use of DHL's web services and include: breach of contract claims; a breach of the obligation of good faith, fair dealing, and commercial reasonableness claim; an unjust enrichment and imposition of a constructive trust claim; a promissory estoppel claim; a claim for money had and received; and a claim for declaratory and injunctive relief. DHL now moves to dismiss all of the non-contract claims asserted against it pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is **GRANTED**.

**II. BACKGROUND**

**A. Factual Background**

These facts are taken from the Complaint. Over a period of several years, Cerdant and Laptop Guy utilized DHL's website to generate waybills for letters or packages they planned on shipping, or planned to have their customers ship, through DHL. Plaintiffs assert that DHL

1

assesses shipping fees to customer accounts as soon as these waybills are printed, despite the fact that customers may not decide to follow through with a shipment or may print several copies of a waybill. Plaintiffs allege that on several occasions they have decided not to follow through with a shipment for which they had generated a waybill. They further allege that they have been charged shipping fees despite not tendering the items listed in such waybills to DHL for delivery.

In order to use DHL's services through the Internet, customers are required to register and set up an online account. While going through the process of setting up an account on DHL's website, customers are required to check a box stating that they agree to be bound by DHL's online Terms and Conditions. The Terms and Conditions set forth the agreement between DHL and its customers for services provided by DHL. DHL's Terms and Conditions also make reference to other service guidelines, and the webpage also contains a link to DHL's shipment rules and regulations.

Plaintiffs allege that none of these documents makes reference to the ability or authority of DHL to charge customers for goods that are never tendered for delivery. Furthermore, Plaintiffs note that none of the documents states that customers will be charged for printing waybills, regardless of whether they follow through with a shipment. Despite these omissions, Plaintiffs assert that they, as well as other members of the class, have been charged shipping fees for goods that have never been tendered to DHL for delivery. Thus, they allege that DHL has breached the terms of its standardized agreement with its customers.

### B. Procedural History

On August 16, 2007, Cerdant filed a class action complaint in the Court of Common Pleas for Franklin County, Ohio. On February 1, 2008, Cerdant filed a Motion for Leave to File First Amended Complaint seeking to add Laptop Guy as an additional plaintiff and class

representative. The case was then removed to this Court on the basis of diversity jurisdiction. DHL responded to the Complaint with a Rule 12(b)(6) Motion to Dismiss which is now before the Court.

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). A "motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 553 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). A court will grant a motion to dismiss under Rule 12(b)(6) only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Cmty. Mental Health Serv. v. Mental Health & Recovery Bd.,* 395 F. Supp. 2d 644, 649 (S.D. Ohio 2004).

Although liberal, this standard requires more than the bare assertion of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993). Under the federal pleading requirements, a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127

S.Ct. 2197, 2200 (2007) (internal quotations omitted)). While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007).

## IV. LAW AND ANALYSIS

### A. Plaintiffs' Non-Contract Claims are Preempted by the Federal Aviation Administration Arbitration Act

Counts II-VI of Plaintiffs' complaint set forth various claims including: a claim for breach of the obligation of good faith, fair dealing, and commercial reasonableness; a claim for unjust enrichment and imposition of a constructive trust; a promissory estoppel claim; a claim for money had and received; and a claim for declaratory and injunctive relief (collectively, the "non-contract claims"). DHL's principal ground for dismissal is that the non-contract claims set forth in the Complaint fail to state a claim upon which relief can be granted because they are preempted as a matter of law by the Federal Aviation Administration Arbitration Act (FAAAA) § 14501(c)(1) and § 41713(b)(4). DHL notes that the FAAAA employs the same expansive language as the Airline Deregulation Act (ADA)[1]; therefore, DHL argues that the FAAAA has the same broad preemptive scope as the ADA.

Plaintiffs retort that DHL has failed to establish that it is a motor carrier under the FAAAA for purposes of the transactions set forth in the Complaint. They argue that the transactions fall outside the scope of activity preempted by the statute because DHL never engaged in transporting goods in interstate commerce. Furthermore, Plaintiffs argue that the

---

[1] The ADA's preemption provision provides, "[N]o State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier . . ." 49 U.S.C.App. § 1305(a)(1) (1978).

4

FAAAA does not apply in this case because the express language of FAAAA § 14705 requires delivery or tender of delivery for a claim to fall under the scope of the FAAAA.[2]

The FAAAA preemption provision provides, "[A] state . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to* a price, route, or service of any motor carrier . . ." 49 U.S.C. § 14501(c)(1) (1994) (emphasis added).[3] This language is identical to the preemption provision of the ADA; therefore, the FAAAA's preemption provision is to be broad in scope and preclude "any state enforcement action having a connection with or reference to any price, route, or service of any motor carrier, motor private carrier, or air carrier." *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am.*, 972 F.Supp. 665, 669 (N.D. Ga. 1997); *Barber Auto Sales, Inc. v. United Parcel Serv., Inc.*, 494 F. Supp. 2d 1290, 1293 (N.D. Ala. 2007). Furthermore, the House Conference Report on the FAAAA explains that its preemption provision "is identical to the preemption provision deregulating air carriers . . . and is intended to function in the exact same manner with respect to its preemptive effects." *Deerskin*, 972 F. Supp. At 669 (quoting H.R. Conf. Rep. No. 103-677, 103rd Cong., 2d Sess. 85 (1994), *reprinted in* U.S.C.A.N.N. 1715, 1757); *see Ace Auto Body & Towing, Ltd. v.*

---

[2] The Plaintiffs also make a brief statement asserting that DHL has waived its right to assert preemption as a basis for dismissal because it failed to raise preemption as an affirmative defense in its responsive pleading. Plaintiffs, however, provide no legal support for this argument. In any event, the case law makes clear that failure to raise an affirmative defense does not always result in a waiver. The purpose of the waiver rule is give notice to the opposing party and to give that party a chance to respond. *See Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). If the failure to assert an affirmative defense does not result in surprise or unfair prejudice to the opponent, the failure will not be fatal. *Id.*; *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993); *Stupak-Thrall v. Glickman*, 346 F.3d 579, 585 (6th Cir. 2003). After Cerdant filed their Complaint in state court, DHL filed a Motion for Summary Judgment and asserted preemption as a basis for its motion. Thus, Plaintiffs in this case have not been subject to surprise or unfair prejudice as a result of DHL's failure to raise preemption as an affirmative defense.

[3] Section 14713(b) contains similar language, stating "[A] state . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . ." 49 U.S.C. § 41713(b).

*City of New York*, 171 F.3d 765, 773 (2d Cir. 1999); *see also Mastercraft Interiors, Ltd. v. ABF Freight Shippers, Inc.*, 284 F. Supp. 2d 284, 286 (D. Md. 2003) (stating that Congress intended for the preemption provision of the FAAAA to be applied in the same manner as the preemption provision in the ADA).

Thus, in applying the preemption provision of the FAAAA, this Court will rely on the Supreme Court's interpretation of the scope of the ADA's preemption provision. The Supreme Court has focused on the words "relating to" when interpreting the ADA preemption provision, and concluded that such language has an expansive sweep. *See Morales v. Trans World Airlines*, 504 U.S. 374, 384-85 (1992) (stating that the ADA preemption provision is not limited to state action actually prescribing rates, routes or services; rather, it applies to any state enforcement actions "having a *connection with or reference to* airline rates, routes or services…" (emphasis added)). The ordinary meaning of "relating to" is broad: "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with . . ." *In re EVIC Class Action Litigation*, No. M-21-84, 2002 WL 1766554, at *8 (S.D.N.Y. July 31, 2002), *citing see Deerskin Trading*, 972 F.Supp. at 668. The claims asserted in *Deerskin* were held to "relate to" the prices charged by the defendants for various services because the core of each claim was that the defendant inappropriately charged the plaintiff. *Deerskin*, 972 F. Supp. at 672.

The Supreme Court has also held that while the ADA does not bar routine breach of contract claims, courts are limited to "the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995). Based on this principle, other federal courts have held that the FAAAA preempts equitable claims because such claims represent a departure from "routine breach of contract actions" and an "enlargement and enhancement" of the parties' bargain. *See Deerskin*,

6

972 F. Supp at 673 (dismissing claims for unjust enrichment, imposition of a constructive trust, and injunctive relief because such an award would be "extraordinary" and outside the scope of "routine breach of contract actions"); *see also, e.g., Barber Auto Sales*, 494 F. Supp. 2d at 1294 (dismissing equitable claims for injunctive relief and rescission of the contract because such claims are preempted by the FAAAA); *Yellow Transp., Inc. v. DM Transp. Mgmt. Servs., Inc.,* No. 06DCV1517-LDD, 2006 WL 2871745, at *4 (E.D. Pa. July 14, 2006) (dismissing claims for unjust enrichment, quantum meruit, and fraud because such claims are preempted by the FAAAA, but breach of contract claim survives); *Thermal Techs., Inc. v. United Parcel Serv., Inc.,* No. 08-CV-102-GKF-FHM, 2008 WL 4838681, at *9 (N.D. Okla. Nov. 5, 2008) (dismissing unjust enrichment claim because it is preempted by the FAAA); *All World Prof'l Travel Servs., Inc. v. Am. Airlines, Inc.,* 282 F.Supp.2d 1161, 1169 (C.D. Cal. 2003) (finding that claims for unjust enrichment and declaratory and injunctive relief are preempted if the claims relate to prices or services).

The reasoning employed by the courts set forth above demonstrates that the Plaintiffs' claims for equitable relief in this case must be dismissed as a matter of law because they are preempted by the FAAAA. The claims asserted by the Plaintiffs "relate to" the price that DHL is charging its customers when they generate waybills online because, similar to the claims in *Deerskin*, at the core of the claims is the argument that DHL inappropriately charged the Plaintiffs. The claims also have a "connection" to the Internet services provided by DHL on its website. Just as the claims in *Deerskin* and *Barber Auto Sales*, however, the non-contract claims set forth in the Complaint go beyond a "routine breach of contract" claim. All of these claims would constitute an enlargement or enhancement of the parties' bargain, and granting such relief

7

"cannot be said to be routine, especially as a remedy for a breach of contract." *Barber Auto Sales*, 484 F. Supp. 2d at 1294 (quoting *Deerskin*, 972 F. Supp at 674-75).

The Plaintiffs attempt to refute DHL's preemption argument by asserting that DHL has failed to demonstrate that it qualifies as a motor carrier under the FAAAA with respect to the transactions at issue. They argue that DHL fails to meet the definition of a motor carrier in this case because DHL has not provided "motor vehicle transportation for compensation" since no goods were ever tendered for delivery. *See* 49 U.S.C. § 13102(14) (defining motor carrier). However, § 41713(b)(4), *Preemption: Transportation by air carrier or carrier affiliated with a direct air carrier*, states:

> [A] State . . . may not enact or enforce a law, regulation, or other provisions having the force and effect of law related to a price, route, or service of an air carrier . . . when such carrier is transporting property by aircraft or by motor vehicle (*whether or not such property has had or will have a prior or subsequent movement*).

49 U.S.C. § 41713(b)(4) (emphasis added). Accordingly, it is clear that DHL would qualify as a motor carrier under the FAAAA for the purposes of the transactions at issue. The sole basis for customers printing waybills online is to utilize the services of DHL to transport property. The fact that customers decide not to execute a waybill has no bearing on the effect of the statute because § 41713(b)(4) specifically states that it applies to goods regardless of whether they have "had or will have a prior or subsequent movement." Furthermore, the sole purpose behind the business relationship of the parties is to engage in the transportation of goods.[4]

---

[4] Plaintiff also points to a California case which held that the plaintiff's state law claims were not preempted under the FAAAA. *See Wayne v. DHL Express (USA), Inc.*, No. B171591 2005 WL 1140686 (Cal. Ct. App. May 16, 2005). This case is distinguishable from the case at hand because it involved claims that DHL did not have a license to sell insurance and that its insurance rates were excessive. Unlike the case at hand, these were optional services DHL was providing to its customers, and the claims asserted were not equitable claims.

Another argument advanced by Plaintiffs is that DHL's preemption claim is precluded under FAAAA § 14705 because a claim for overcharges under that section only accrues "on delivery or tender of delivery by the carrier." 49 U.S.C. § 14705(g). Plaintiffs argue that since no goods in this case were ever delivered or tendered for delivery, the FAAAA has no application in this case. However, § 14705 addresses limitations on civil actions against a carrier to recover overcharges. An action to recover overcharges is a breach of contract claim, and DHL has excluded those claims from its Motion to Dismiss, and is seeking to dismiss only the non-contract claims. Section 14705 has been construed by courts as only applying to breach of contract claims, and has no impact on the FAAAA's preemption of non-contract claims. *See Lear Corp. v. LH Trucking, Inc.*, No. 05-74477, 2008 WL 2610239, at *10 (E.D. Mich. July 1, 2008) (holding that the term "overcharge" in § 14705(b) applied to plaintiff's breach of contract claim because the meaning of the term is to "charge too much or too fully" based on a stated contractual amount); *see also Barber Auto Sales*, 494 F. Supp. 2d 1294-95 (applying § 14705(b) solely to the plaintiff's breach of contract claim, and not to the plaintiff's equitable claims). Therefore, § 14705 does not bar DHL's preemption claim for Plaintiffs' non-contract claims.

For the reasons set forth herein, Plaintiffs' non-contract claims are dismissed as a matter of law because they are preempted by FAAAA § 14501(c)(1) and § 41713(b)(4).

### B. Plaintiffs' Equitable Claims Cannot Stand In Face of Breach of Contract Claims

DHL also asserts an alternative basis for the dismissal of Plaintiffs' claims for unjust enrichment and imposition of a constructive trust, promissory estoppel, and money had and received. DHL argues that these claims must be dismissed as a matter of law because they cannot exist in the face of a breach of contract action. Plaintiffs make no attempt to refute this assertion in their memorandum in opposition.

A plaintiff is entitled to equitable relief only when there is no adequate legal remedy available. *Di Giovanni v. Camden Fire Ins. Ass'n*, 296 U.S. 64, 69 (1935); *see also Aluminum Workers Int'l Union v. Consol. Aluminum*, 696 F.2d 437, 446 (6th Cir. 1982) ("because equitable relief is an extraordinary remedy to be cautiously granted, it follows that the scope of relief should be strictly tailored to accomplish only that which the situation specifically requires and which cannot be attained through legal remedy.") In addition, where an express contract covers the subject matter of an equitable claim, the equitable claim will fail as a matter of law. *See Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975) (dismissing claims of unjust enrichment where an express contract covered the same contract); *Davis & Tatera, Inc. v. Gray-Syracuse Inc.*, 796 F. Supp. 1078, 1086 (S.D. Ohio 1992) (stating that the plaintiff could not prevail on its claim for unjust enrichment where the plaintiff's claims were governed by a contract); *Cook v. Home Depot USA, Inc.*, No. 2:06-cv-00571, 2007 WL 710220, at *8 (S.D. Ohio Mar. 6, 2007) (dismissing claims for unjust enrichment and money had and received when both claims challenged the same conduct as a breach of contract claim).

In this case, Plaintiffs have an adequate legal remedy in their breach of contract action; therefore, equitable relief is not necessary to make the parties to the Complaint whole. In addition, the equitable claims are based on the same conduct as the breach of contract action. The breach of contract claim alleges that DHL has inappropriately charged its customers for goods never tendered to them for delivery. Similarly, the equitable claims rest on this alleged inappropriate conduct of DHL. There is also a contract governing the relationship between DHL and customers using the website, which is set forth in DHL's online Terms and Conditions and other shipping guidelines. Thus, as a matter of law, Plaintiffs' claims for equitable relief cannot stand.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant DHL's Motion to Dismiss all non-contract claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

**IT IS SO ORDERED.**

**s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**Dated: March 16, 2009**